IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINDA REID-FALCONE                          :
                         Plaintiff          :
         v.                                 :          3:CV-02-1818
                                            :          (CHIEF JUDGE VANASKIE)
LUZERNE COUNTY COMMUNITY                     :
COLLEGE                                      :
                         Defendant          :

### MEMORANDUM

Plaintiff Linda Reid-Falcone brings this action against Defendant Luzerne County
Community College ("LCCC") under the Family and Medical Leave Act of 1993 ("FMLA"), 29
U.S.C. § 2601, et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §
2000e, et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. § 955(a),
and the parties' 1997 Consent Decree.  Ms. Reid-Falcone's action is predicated upon LCCC's
alleged failure to restore her to a position equivalent to the one she held before taking maternity
leave in 2001 and 2002.  She asserts that although her job title, compensation and benefits
remained the same, the responsibilities and duties assigned to her position were significantly
reduced when she returned from an approved eight-month leave of absence.  LCCC has moved
for summary judgment.  Because Plaintiff cannot show that she invoked the protection of the
FMLA, LCCC is entitled to summary judgment on Plaintiff's claim that the reduction in authority
was intended to retaliate against her for taking leave that could have, but was not, taken under
the FMLA.  Because Plaintiff did not pursue statutorily-mandated administrative remedies,

Defendant is also entitled to summary judgment on the claims asserted under Title VII and the PHRA. Because Plaintiff has tendered sufficient evidence in support of her claim of interference with FMLA rights and breach of the 1997 Consent Decree, summary judgment on those claims will be denied.

I.    **BACKGROUND**

Ms. Reid-Falcone was hired by LCCC in 1992 as an Associate Dean of Continuing Education. Since that time Ms. Reid-Falcone has held several other positions at LCCC. She was made the Executive Director of Development in 1993 and named Associate Dean of Business and Industry Development in 1998, the position which she currently holds.

In 1996, Ms. Reid-Falcone, along with five other employees of LCCC, filed a sexual harassment suit against LCCC, its president at the time, and others. The lawsuit was resolved by a Consent Decree entered by this Court on September 23, 1997. Among other things, LCCC agreed not to adversely affect the terms of Plaintiff's employment without just cause.

Prior to June of 2000, Plaintiff's immediate supervisor was Ann Williams, the LCCC Vice President of Economic and Community Development. After Ms. Williams resigned, Plaintiff reported directly to the interim LCCC President, Andreas Paloumpis, for about six months.[1] In January of 2001, Dr. Paloumpis assigned the functions of the Economic and Community Development Division to the LCCC Division of Academic Affairs, headed by John Wills.

_____

[1] Dr. Paloumpis was not at LCCC when the Consent Decree was executed.

In February of 2001, Ms. Reid-Falcone learned that she was pregnant.  She conferred with a college Human Resources Associate, Barbara Struckus, on the matter of maternity leave. She inquired into whether maternity leave fell under the FMLA, and was told that it did not and that "the college policy is different."  (Reid-Falcone Dep. at 22-23.)  On February 23, 2001, she submitted a request to Paloumpis for approximately eight (8) months of maternity leave.[2]

By memorandum dated March 28, 2001, Dr. Paloumpis approved the request for a "maternity/child rearing leave of absence."  (Ex. 4 to Reid-Falcone Dep.)  Dr. Paloumpis' memorandum stated: "It is important that you understand all issues related to your maternity leave, so I suggest that you meet with Rich Amico, Associate Dean of Human Resources." (Id.)

---

[2] Plaintiff's request was as follows:

> Based on my meeting with Barbara Struckus, who reviewed the college policy with me, I am writing to alert you of my anticipated maternity leave.  My expected delivery date is July 29, 2001 and I wanted to inform the college in advance so that appropriate notification and schedules can be managed.
>
> With your approval, in accordance with past practices regarding administrative maternity leave, I would like to begin my leave on Monday, July 23, 2001.  I would like to take off daily from July 23, 2001 until Friday, March 22, 2001.  During this time, I will use my accumulated sick and vacation time which I have discussed with Barbara Struckus.

(Reid-Falcone Dep. Ex. 2).

It is unclear whether Plaintiff did so.  It is clear, however, that "plaintiff did not make any written application to LCCC specifically requesting FMLA leave."  (Def's Statement of Material Facts, ("SMF") at ¶ 15.)[3]  It is also clear that LCCC did not classify Plaintiff's leave as either FMLA or non-FMLA leave.  Nor was Plaintiff told that her FMLA right to reinstatement to her pre-leave position would expire at the end of 12 weeks of leave.

By memorandum dated March 15, 2001, Dr. Paloumpis expressed to Plaintiff his concerns about her making commitments on LCCC's behalf.  (Ex. 7 to Def's S.J. App.)  The memorandum informed Plaintiff that she was "not to make any further overtures to providing LCCC academic programs . . . [and] will not meet with and make any financial commitments, including grants, to any group that would then be presented to our Board of Trustees after the fact."  (Id.)  Ms. Reid-Falcone considered this memorandum to be "hostile and threatening." (Reid-Falcone Dep. at 32.)  She complained about this memorandum and a hostile work environment to Richard Amico, Associate Dean of Human Resources.  She claimed that "others" had told her that Paloumpis had referred to her as a "bitch" and demonstrated a sexually hostile and retaliatory attitude toward her. (Id. at 44.)  In addition, Ms. Reid-Falcone informed Tom Leary, Vice President of Student Development, that she was concerned that she would become the target of retaliation by Paloumpis for filing a complaint against him.

---

[3] Citation to a paragraph in Defendant's Statement of Material Facts submitted in support of its summary judgment motion signifies that Plaintiff does not dispute the asserted fact.

As a result of the complaint, LCCC directed Attorney Robert Panowicz to conduct an investigation into the matter. (SMF at ¶23.)  He concluded in his report dated February 13, 2002 that Paloumpis's actions did not evidence a pattern of sexual discrimination or the creation of a hostile work environment. (Panowicz Investigation Report at 13-14.)

Ms. Reid-Falcone began her maternity/child rearing leave in July of 2001.  On February 28, 2002, Ms. Reid-Falcone requested an extension of her leave that would allow her to return to work part-time for two (2) days per week beginning in April and lasting through July 4, 2002. Her request was approved and she began working part-time.  After April, Ms. Reid-Falcone worked three days a week through July 4, 2002. (Reid-Falcone Aff. at ¶28.)

When  Ms. Reid-Falcone returned to work she was told to contact her supervisor to learn her revised job responsibilities.  (SMF ¶ 30.)  Her new supervisor, Nancy Kosteleba, provided Plaintiff with a written job description dated August 9, 2001, several weeks after her leave began.  (Reid-Falcone Dep. Ex. 5.)  This job description differed substantially from the job description that existed when Plaintiff went on leave. (Reid-Falcone Dep. at 52-57.)  Ms. Reid-Falcone's position, title and compensation, however, remained the same.  (SMF ¶¶ 35-36.)

The most significant change to Ms. Reid-Falcone's position was that she no longer had the authority to legally bind LCCC. (Id. at 52-53.)  In addition, Ms. Reid-Falcone was not allowed to participate on any college committee, her role as a supervisor was eliminated and she was no longer able to approve course offerings, purchases, letters of agreements, or payroll

authorizations. (Reid-Falcone Dep. at 54-64.)

This action was brought on October 10, 2002.  The Complaint contains four numbered counts, asserting violations of the FMLA (Count I), the 1997 Consent Decree (Count II), Title VII (Count III), and the PHRA (Count IV).  Each count alleges multiple breaches of statutory and contractual obligations.  As to the claims for relief under Title VII and the PHRA, The Complaint does not allege satisfaction of the statutory prerequisites for bringing suit.

Defendant has moved for summary judgment on all claims.  The motion has been fully briefed and is ripe for disposition.

## II.    DISCUSSION

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).  The moving

party has the burden of showing the absence of a genuine issue of material fact, and the

nonmoving party must present affirmative evidence from which a jury might return a verdict in

the nonmoving party's favor.  <u>Anderson</u>, 477 U.S. at 256-57.  Merely conclusory allegations

taken from the pleadings are insufficient to withstand a motion for summary judgment.  <u>Schoch</u>

<u>v. First Fid. Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990).  Summary judgment is to be

entered "after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

322 (1986).

   A.   <u>The FMLA Claims (Count I)</u>

      "The Family and Medical Leave Act, which was designed to 'balance the demands of the

workplace with the needs of families,' empowers employees to take reasonable leave from work

for medical reasons without fear of reprisal."  <u>Settle v. S.W. Rodgers Co., Inc.</u>, 998 F. Supp. 657,

663 (E.D. Va. 1998).  The FMLA establishes work-setting entitlements protected by

enforcement provisions that make actionable not only the wrongful denial of the entitlements,

but also conduct that is intended to discriminate against or punish workers who exercise FMLA-

guaranteed rights.  As explained in <u>Hodgens v. General Dynamics Corp.</u>, 144 F.3d 151, 159-60

(1st Cir. 1998):

           The FMLA contains two distinct types of provisions. First, it creates
           a series of substantive rights. Eligible employees "shall be entitled"

7

to up to twelve weeks of unpaid leave per year for any one of the following purposes: when the employee has "a serious health condition that makes [him or her] unable to perform the functions of [his or her] position," 29 U.S.C. § 2612(a)(1)(D); to care for a close family member with such a condition, 29 U.S.C. § 2612(a)(1)(C); or because of the birth, adoption, or placement in foster care of a child, 29 U.S.C. § 2612(a)(1)(A) & (B).  Following a qualified absence, the employee is entitled to return to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.100(c) (1997). . . .

These rights are essentially prescriptive, "set[ting] substantive floors" for conduct by employers, and creating "entitlements" for employees.  As to these rights, therefore, the employee need not show that the employer treated other employees less favorably, and an employer may not defend its interference with the FMLA's substantive rights on the ground that it treats all employees equally poorly without discriminating. Id. at 712. In such cases, the employer's subjective intent is not relevant. The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA – for example, a twelve-week leave or reinstatement after taking a medical leave. Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.

In addition to creating the above entitlements, the FMLA provides protection in the event an employee is discriminated against for exercising those rights.  29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220 (1997). In particular, "[a]n employer is prohibited from discriminating against employees ... who have used FMLA leave." 29 C.F.R. § 825.220(c). Nor may employers "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). For any such violation, the employer is subject to a claim for compensatory damages and, unless the court finds the violation occurred in good faith, additional liquidated damages. 29 U.S.C. § 2617(a)(1)(A). These provisions are essentially

proscriptive.

The Department of Labor has promulgated regulations to implement the entitlements and substantive safeguards created by the legislation.  "The regulations make it the employer's responsibility to tell the employee that an absence will be considered FMLA leave." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 87 (2002) (citing 29 C.F.R. § 825.208(a) (2001)). "Under the regulations, the employer must communicate with employees regarding their rights under the FMLA, providing individualized notice to employees regarding their FMLA rights and obligations." Fogleman v. Greater Hazleton Health Alliance, 122 Fed. Appx. 581, 587 (3d Cir. 2004).  The employer also has the responsibility of informing the employee of her right to reinstatement to the same or equivalent position upon return from leave. Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 142 (3d Cir. 2004) (citing 29 C.F.R. § 825.301(b)(1)(vii)).  A violation of the regulations may constitute interference with the exercise of FMLA rights.  Id. (citing 29 C.F.R. § 825.220(b)).  Moreover, employers may not manipulate a leave system to avoid responsibilities under the FMLA.  Id.  Furthermore, "'[e]mployees cannot waive, nor may employers induce employees to waive their rights under FMLA." Id. (quoting 29 C.F.R. § 825.220(d)).

Courts have recognized two types of claims emanating from the FMLA  statutory and regulatory framework.  See Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 570-71 (M.D. Pa. 2004).  Parker v. Hanhemann Univ. Hospital, 234 F. Supp. 2d. 478, 485, 487-88

(D.N.J. 2002).  "First, a plaintiff may pursue recovery under an "entitlement or 'interference'

theory." <u>Weisman v. Buckingham Tp.</u>, No. Civ.A. 04-CV-4719, 2005 WL 1406026, at *4 (E.D.

Pa. June 14, 2005).  Such a theory is based on 29 U.S.C. § 2615(a)(1), which proscribes

interference with or denial of an employee's FMLA rights.  <u>Id.</u>  "The second type of recovery

under the FMLA is the retaliation theory.  <u>Id.</u>  "This claim arises under 29 U.S.C. § 2615(a)(2),

which makes it unlawful for an employer to discriminate against an employee who has taken

FMLA leave." <u>Bearley</u>, 322 F. Supp. 2d at 571.

　　　Ms. Reid-Falcone has advanced both types of claims: she claims interference with

FMLA rights because she was not told of the difference between the college leave policy and

FMLA leave (specifically, that the FMLA right of restoration to the same or equivalent position

expired after twelve weeks of leave), and she claims that the changes in her authority and

responsibilities were made to retaliate against her for taking leave.  Each theory rests upon the

change in her job responsibilities when she returned from her leave.

### 1.  Plaintiff's FMLA Interference Claim

　　　LCCC contends that Plaintiff cannot pursue an interference claim because "(1) she did

not take FMLA leave, but took leave under the College's leave policy; (2) she did not return

from FMLA leave within the twelve (12) week time period set forth by the FMLA and was thus

not entitled to return to the same position; (3) if this Court determines she took FMLA leave, she

knew of her modified job duties prior to leaving on FMLA leave; [and] (4) she returned to a

substantially equivalent position." (Brief in Supp. of S.J. Mot. at 3.)

As to its first enumerated position, LCCC relies upon Plaintiff's admission that her leave was taken pursuant to the College's policy and not the FMLA. Ms. Reid-Falcone responds by pointing out that she qualified for FMLA leave and would have structured her leave in such a manner as to preserve her reinstatement rights. (Reid-Falcone Aff. at ¶¶ 12-14.) She further asserts that LCCC interfered with her right to reinstatement under the FMLA by failing to adequately notify her that taking the leave approved pursuant to LCCC's leave policy would deprive her of the protection of the FMLA. She contends that LCCC never fully explained to her the differences between its leave policy and the FMLA. More precisely, Ms. Reid-Falcone claims that she was never informed that she had a right to take her leave under the FMLA, regardless of the college's leave policy, thereby ensuring her right of reinstatement.

In a decision handed down after the completion of briefing on LCCC's summary judgment motion, our Court of Appeals validated Ms. Reid-Falcone's theory of recovery. See Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135 (3d Cir. 2004). In Conoshenti, the plaintiff sustained a non-work related injury and went on a leave of absence commencing December 6, 1999. It was undisputed that the serious injury qualified the plaintiff for FMLA leave. He was not told by his employer, however, that he was entitled to 12 weeks of protected leave and he was not told that the leave he was using would be considered FMLA leave. Three weeks after commencing his leave of absence, the plaintiff, on the advice of his union, informed

his employer in writing that he was requesting leave under the FMLA.  The plaintiff did not

return to work until April 17, 2000, approximately 17 weeks after his leave had commenced and

more than 14 weeks after requesting FMLA leave.  Upon his return to work the plaintiff was

discharged.  As in this case, the employer argued that the plaintiff was not entitled to

reinstatement to his former position because his leave had exceeded the maximum 12-week

period provided by the FMLA.  In reversing the grant of summary judgment in favor of the

employer, our Court of Appeals wrote:

> Conoshenti argues that PSE&G's failure to advise him of his right
> to 12 weeks of FMLA leave, after he properly gave notice of his
> serious health condition, constituted an interference with his FMLA
> right to that protected leave.  Had he received the advice PSE&G
> was obliged to provide, Conoshenti insists, he would have been
> able to make an informed decision about structuring his leave and
> would have structured it, and his plan of recovery, in such a way as
> to preserve the job protection afforded by the Act. . . .

> [T]he parties stipulated in the District Court that, for purposes of
> summary judgment, PSE&G did not advise Conoshenti of his rights
> under the FMLA.  As we have also noted, the regulation under the
> FMLA imposed a duty on PSE&G to do so.  It follows, we believe,
> that Conoshenti will show an interference with his right to leave
> under the FMLA, within the meaning of 29 U.S.C. § 2615(a)(1), if
> he is able to establish that this failure to advise rendered him
> unable to exercise that right in a meaningful way, thereby causing
> injury.

364 F.3d at 143.  Accord, Fry v. First Fidelity Bancorporation, No. Civ. A. 95-6019, 1996 WL

36910, at *5 (E.D. Pa. Jan. 30, 1996) ("if an employer fails to adequately notify its employees of

the impact of its own family leave policies on the rights provided by the FMLA, particularly

12

where there is an apparent conflict between the employer's policy and the employees' FMLA rights, such conduct can constitute interference with an employee's FMLA rights if it causes an employee to unwittingly forfeit the protection of the FMLA").

Conoshenti is controlling here.  Ms. Reid-Falcone insists that she was not informed of her FMLA rights, and particularly her right of reinstatement.  There is no evidence that she was specifically informed that she would forfeit her right of reinstatement if her leave exceeded the FMLA 12-week maximum.  Indeed, there is an absence of any evidence on the record that Ms. Reid-Falcone received any of the advice required by the Department of Labor regulations or that she was told that her absence was being treated as FMLA or non-FMLA leave.[4]  Pointing to the fact that Ms. Reid-Falcone's leave totaled approximately 32 weeks, some 20 weeks in excess of the FMLA required maximum, LCCC argues that the absence of notice could not have prejudiced Ms. Reid-Falcone.  Stated otherwise, LCCC contends that no reasonable fact finder could conclude that Ms. Reid-Falcone would have returned to work 12 weeks after commencing her leave in order to protect her reinstatement rights.  Ms. Reid-Falcone, however, has made such a sworn assertion, and that is sufficient to defeat LCCC's summary judgment motion.  See Conoshenti, 364 F.3d at 145-46.

---

[4]In its Reply Brief in support of its summary judgment motion, LCCC asserts that its policy manual (that plaintiff acknowledges receiving) contains information concerning various types of leave offered by LCCC, including FMLA leave.  The policy manual, however, is not part of the summary judgment record before this Court.

LCCC argues that summary judgment in its favor is warranted in any event because Ms. Reid-Falcone "knew of her modified job duties prior to leaving on FMLA leave and she returned to a substantially equivalent position." (Brief in Support of S.J. Mot. at 5.)  As to the contention that Plaintiff knew that her job duties were to be modified before she went on maternity leave, LCCC asserts that Dr. Paloumpis had developed a reorganization plan to centralize authority in the office of the college president.  Plaintiff, however, calls this assertion into doubt by noting the absence of any documentation of a "reorganization plan" as well as the absence of any evidence that any other college administrator's duties were affected by the purported "reorganization plan."  It also bears observation that the new job description for the position held by Ms. Reid-Falcone is dated August 9, 2001, several weeks <u>after</u> she commenced her leave of absence.  Furthermore, LCCC specifically acknowledges that "[t]here were differences between Plaintiff's job description prior to her maternity leave and the job description handed to her [upon her return from leave]." (SMF at ¶ 32.)  Thus, there is at least a genuine dispute of the facts material to the question of whether Plaintiff knew her job duties were changing when she went on leave.  <u>Heron v. American Heritage Federal Credit Union</u>, No. Civ.A. 02-CV-7209, 2005 WL 1041193, at *4-5 (E.D. Pa. May 2, 2005) (denying summary judgment where there were genuine disputes of fact as to whether a restructuring of plaintiff's department had been planned prior to his leave and whether there had, in fact, been a "restructuring").

As to the contention that she was returned to a substantially equivalent position, Ms.

14

Reid-Falcone asserts that her authority was diminished significantly and her status within the college community was reduced.  She purportedly lost her authority to bind the college, her role as a supervisor was eliminated, she could no longer approved course offerings, and she was removed from all college committees on which she had served prior to her leave.

In pertinent part, the FMLA provides:

> [A]ny eligible employee who takes leave . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1).  Implementing regulations expand on this statutory requirement by explaining that "[a]n equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status.  It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority."  29 C.F.R. § 825.215(a).  Thus, under the statute and implementing regulations, the fact that Plaintiff had the same title and pay when she returned to work is not dispositive.

Determining equivalency of job positions "is generally a question of fact for the jury." Parker, 234 F. Supp. 2d at 489.  In this case, there is no dispute that Plaintiff's post-leave job responsibilities and authorities differed from her pre-leave position.  The question is whether her

15

duties before and after her leave were <u>substantially</u> similar.  <u>See</u> <u>Mitchell v. Dutchmen Mfg.,</u>

<u>Inc.</u>, 389 F.3d 746, 749 (7th Cir. 2004).  Resolution of this question entails an understanding not

only of the job descriptions, but also of the actual work performed and authority possessed by

Plaintiff before and after her leave.  The record in this case does not permit such an

assessment.  For example, there is no evidence comparing Plaintiff's day-to-day activities

before and after her leave.  Thus, summary judgment in favor of LCCC on this issue is not

warranted.  <u>See</u> <u>Taylor v. Cameron Coca-Cola Bottling Co.</u>, No. 96-1122, 1997 WL 719106, at

*20-21 (W.D. Pa. March 27, 1997) (denying summary judgment where it was undisputed that

work responsibilities had changed and there was a genuine issue of material fact as to whether

the change indicated that Plaintiff was not provided an equivalent position upon her return from

maternity leave).

## 2.  Plaintiff's FMLA Retaliation Claim

There is some consensus among the courts, particularly Pennsylvania Federal District

Courts, that the <u>McDonnell-Douglas</u> burden-shifting approach provides the appropriate

analytical framework for an FMLA retaliation claim.  <u>See</u> <u>e.g.</u>, <u>Voorhees v. Time Warner Cable</u>

<u>National Div.</u>, No. Civ.A. 98-1460, 1999 WL 673062, at *3 (E.D. Pa. Aug. 30, 1999); <u>Holmes v.</u>

<u>Pizza Hut of America, Inc.</u>, No. Civ. A. 97-4967, 1998 WL 564433, at * 7 (E.D. Pa. Aug. 31,

1998) ("most courts have held that . . . the anti-retaliation analysis is <u>McDonnell's</u> burden-

shifting analysis"); <u>Williams v. Shenango, Inc.</u>, 986 F. Supp. 309, 318 (W.D. Pa. 1997).  As

explained by Judge Simandle in <u>Parker</u>, 234 F. Supp. 2d at 492 n.14:

> Under this framework, plaintiff must first establish a prima facie case of discrimination by showing (1) that she took advantage of the protected right to leave under the FMLA, (2) that she was adversely affected by an employment action taken by defendants, and (3) the unfavorable employment action was caused by her choice to take the leave under the FMLA.  Then, the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Then, plaintiff must show that the non-discriminatory reason given is really a pretext for actual discrimination.

LCCC argues that Plaintiff cannot satisfy the first element of her prima facie case of retaliation – "that she took advantage of the protected right to leave under the FMLA."  <u>Id</u>.  In this regard, plaintiff, in response to Defendant's Statement of Material Facts, acknowledged that she never made any written application to the college specifically requesting FMLA leave; that she was informed that she was taking leave under the college leave policy; and that it was her understanding that the college followed its own policy for leave.  (SMF at ¶¶ 15-17.)

Plaintiff, without citation to any authority, suggests that an employee's failure to invoke the protections of the FMLA (as well as be subjected to its limitations) does not insulate an employer from liability on a retaliation claim.  According to Plaintiff, "the proper analysis is whether or not the employer's motivation in refusing to restore the employee was on account of the employee's taking leave that **qualified for** FMLA protection."  (Brief in Opp. to S.J. Mot. at 6 n.1; emphasis in original.)  Thus, Plaintiff's position is that retaliation for taking leave is enough

17

to support a claim, regardless of whether leave was taken under the FMLA.

Plaintiff's position does not square with the language employed by Congress. The legislative proscription is that an employer not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).  Congress did not proscribe retaliation for taking leave that may have qualified for protection under the FMLA.  Nor can support for Plaintiff's position be found in the Department of Labor regulations, which state that "employers cannot use the taking of FMLA leave as a negative factor in employment actions . . . ."  Plaintiff did not take FMLA leave, and there is no evidence that the employer treated the absence as FMLA leave.

The difficulty with Plaintiff's argument is that it would extend liability to any adverse employment action taken after an employee returns from leave that could have qualified under the FMLA, even where the employee understands that the leave is not taken pursuant to the FMLA.  This is the scenario presented here.  Plaintiff explicitly acknowledges that she understood that her leave was not covered by the FMLA.  Yet, to recover on her retaliation theory, she must prove that the motivating factor for the alleged adverse employment action was her exercise of FMLA-protected rights.  Because she cannot show that she invoked a right protected by the FMLA in the first instance, she cannot show that LCCC took action in retaliation for the exercise of such a right.

The flaw in Plaintiff's logic is revealed by the fact that the argument in support of her

18

retaliation claim advanced in her opposition brief meanders into the issue of whether she was denied a substantially equivalent position upon her return from leave. As noted above, both the interference and retaliation claims are based upon the difference in job authority and responsibilities upon her return from leave. On an interference claim, plaintiff need not prove discriminatory intent, but only that she was entitled to reinstatement and denied it, with the burden then resting on the employer to show that the job duties would have changed regardless of whether or not she took leave. See Parker, 234 F.Supp. 2d at 486. On the other hand, retaliation requires proof of retaliatory intent. Allowing a plaintiff to pursue a retaliation theory for adverse action taken after a leave of absence that the employee did not take (for whatever reason) under the FMLA, would effectively conflate the interference and retaliation theories of recovery. Plaintiff could recover on a retaliation theory without showing an intent to retaliate for the exercise of a protected right. A plaintiff who claims that she was denied access to FMLA rights by not receiving proper notice, and consequently did not invoke FMLA leave, and then seeks recovery on an interference theory, simply cannot simultaneously pursue a retaliation theory of recovery. An employer who manipulates an employee into taking leave not covered by the FMLA and then demotes or discharges the employee upon return to employment cannot have been motivated to retaliate for the exercise of a right protected by the FMLA because the employee did not exercise such a right. In the scenario presented here, the premise for a retaliation claim – the exercise of a right protected by the FMLA – is necessarily absent.

Accordingly, LCCC is entitled to summary judgment on the FMLA retaliation claim.

   B.   The Title VII and PHRA Claims (Counts III and IV)

   Plaintiff's other statutory causes of action are based upon Title VII and the PHRA.  A

claimant must exhaust the administrative remedies and procedures under Title VII and the

PHRA prior to seeking relief under either of those statutes in a court of law.  See Burgh v.

Borough Council of the Borough of Montrose, 251 F.3d 465, 469 (3d Cir. 2001); Bailey v.

Storlazzi, 729 A.2d 1206,1214 (Pa.Super. 1999).  Plaintiff has not alleged in her Complaint that

she satisfied the administrative prerequisites to bringing suit.  Nor has Plaintiff cited any

authority that would relieve her of the obligation to pursue administrative remedies on her

statutory claims because of the earlier Consent Decree.  Significantly, the Consent Decree does

not purport to waive an administrative remedy exhaustion requirement for future statutory

claims.  In this case, the conduct that is allegedly actionable under the anti-discrimination

statutes is some five years removed from the entry of the Consent Decree.  The claim in this

case involves a different college president than the one involved in the Consent Decree.  The

retaliation claims advanced under Title VII and the PHRA plainly exceed the scope of the

administrative complaint that lead to the 1997 Consent Decree.  It certainly cannot be said that

the retaliation claims advanced here fall within the scope of the original administrative complaint

pursued years ago.  Accordingly, the Title VII and PHRA claims will be dismissed for failure to

comply with the administrative exhaustion requirement.  See Spindler v. Southeastern

Pennsylvania Transportation Authority, 47 Fed. Appx. 92, 94 (3d Cir. 2002); Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996).

    C.    **Breach of Consent Decree (Count II)**

Count II of Plaintiff's Complaint is titled "Enforcement of Consent Decree," and is premised upon the assertion that LCCC breached the terms of the September 23, 1997 Consent Decree entered into by the parties in Reid-Falcone v. Luzerne County Community College, No. 3:CV-96-2000 (M.D. Pa.).[5]  In moving for summary judgment, LCCC has relied upon the standards governing civil contempt, and Plaintiff has done likewise.  Thus, for purposes of determining whether summary judgment is warranted, I, too, will apply the civil contempt standards.

A court has the "inherent power to enforce compliance with [its] lawful orders through civil contempt." Spallone v. United States, 493 U.S. 265, 276 (1990) (quoting Shillitani v. United States, 384 U.S. 364, 370 (1966)).  To hold a defendant in contempt, the court must find that (1)

---

[5] LCCC asserts that Ms. Reid-Falcone has failed to timely file a motion for relief from the Consent Decree.  However, Ms. Reid-Falcone is seeking relief under the Consent Decree, which remains in force.  Ms. Reid-Falcone is not claiming that the Consent Decree was faulty.  Rather, she is claiming that LCCC failed to follow its terms.  Thus, as long as the Consent Decree was in effect, either party had the right to institute a legal action to request enforcement of its provisions.  See  Phoenix Resources, Inc. v. Duncan Tp., 155 F.R.D. 507, 509 (M.D. Pa. 1994).

a valid court order existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order.  Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1995); Roe v. Operation Rescue, 919 F.2d 857, 871 (3d Cir. 1990).  Willfulness is not a necessary element. Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148-49 (3d Cir. 1994).  Contempt must be proven by "clear and convincing evidence," and where there is ground to doubt the wrongfulness of the conduct, the defendant should not be held in contempt. Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir.1994).

LCCC does not dispute the fact that a valid Consent Decree existed or that Dr. Paloumpis had knowledge of the Consent Decree, despite the fact that he was not affiliated with the college when the Consent Decree was signed.  Therefore, the only issue is whether there is a genuine dispute of material fact as to whether LCCC "disobeyed the order."

Among other things, the Consent Decree directed that LCCC "not in any way, directly or indirectly, retaliate against Plaintiff, or permit the occurrence of retaliation against Plaintiff by any person or parties under their control or accountable to them, on account of the filing of the [1996 lawsuit]." (Consent Decree, ¶ 4.)  The Consent Decree also provided that LCCC "shall comply with all provisions of its policies pertaining to sex discrimination and sexual harassment." (Consent Decree ¶ 1.)  Finally, pertinent here was the directive that "Plaintiff not be terminated from employment or otherwise have her terms, conditions, and/or benefits of employment adversely affected except for just cause." (Consent Decree, ¶ 6.)

As noted above, the burden of proof standard that applies where a party seeks to hold another in civil contempt is the "clear and convincing" standard.  Robin Woods, 28 F.3d at 399. Thus, the pertinent inquiry on LCCC's summary judgment motion is whether the evidence is of a sufficient "caliber or quantity to allow a rational finder of fact to find [a breach of the consent decree] by clear and convincing evidence."  Anderson, 477 U.S. at 253.

As noted above, Ms. Reid-Falcone asserts that LCCC failed to comply with policies pertaining to sexual harassment, retaliated against her for having brought the original 1996 action, and adversely changed the terms and conditions of her employment without just cause. The quality and quantity of evidence presented by Plaintiff is sufficient to survive summary judgment on at least this last alleged instance of a breach of the consent decree.

It is undisputed that Plaintiff's authority and responsibilities were changed substantially when she returned from her leave of absence.  Plaintiff has also presented evidence that her pre-leave performance had been regarded as satisfactory.  Other than claiming the president's prerogative to reorganize staff and staff functions, LCCC has not pointed to any evidence that would suggest "just cause" for elimination of the authority and reduction in responsibilities. Plaintiff, by way of contrast, has pointed to evidence of Dr. Paloumpis' animosity towards her. She has also pointed to evidence suggesting an anti-woman bias on his part.  A jury could find that the evidence is sufficiently clear and convincing to support a determination that LCCC

23

adversely altered the terms and conditions of her employment without just cause.[6]  Thus,

summary judgment on the alleged breach of the consent decree is not warranted.

III.   CONCLUSION

For the reasons set forth above, judgment will be entered in favor of LCCC on Plaintiff's

FMLA retaliation claim as well as her Title VII and PHRA claims.  In all other respects, LCCC's

motion for summary judgment will be denied.  An appropriate Order follows.


s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

---

[6] Whether there is sufficient evidence to show a breach of the college's policies against sexual harassment or retaliation to defeat summary judgment presents a closer question. Because LCCC is not entitled to summary judgment on the question of whether it breached the Consent Decree with respect to the terms and conditions of Plaintiff's employment, there is no need to resolve at this time the more difficult question of whether there is sufficient evidence of other breaches of the Consent Decree.  The evidence relevant to the asserted breaches is overlapping and the parameters of the claim would best be limited at the conclusion of the evidentiary presentations at trial.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINDA REID-FALCONE             :
           Plaintiff          :
   v.                    :     3:CV-02-1818
                        :     (CHIEF JUDGE VANASKIE)
LUZERNE COUNTY COMMUNITY  :
COLLEGE                 :
          Defendant     :

## ORDER

NOW, THIS 28th DAY OF JUNE, 2005, for the reasons set forth in the foregoing

Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant's "Motion for Summary Judgment" (Dkt. Entry 18) is GRANTED IN PART

AND DENIED IN PART.

       a. Defendant's motion for summary judgment on Plaintiff's claim of interference

with her FMLA rights is DENIED.

       b. Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim

is GRANTED.

       c. Defendant's motion for summary judgment on the issue of a breach of the 1997

Consent Decree is DENIED.

       d. Defendant's motion for summary judgment on Plaintiff's claims asserted under

Title VII and the PHRA is GRANTED.

2.  A telephonic scheduling conference shall be held on **Thursday, July 21, 2005 at 3:00 p.m.**  Counsel for Plaintiff shall make the arrangements for the conference call.


s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

2